DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Skycasters, LLC, | ) | |
| | ) | CASE NO. 5:06 CV 1094 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Hughes Network Systems, LLC, | ) | (Resolving Doc. Nos. 10, 16, 24, 25) |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

Before the Court is plaintiff's motion for a preliminary and permanent injunction. (Doc. No. 16, 18).[1] On May 23, 2006, the Court conducted a hearing[2] on plaintiff's motion and directed the parties to file supplemental briefs,[3] which have now been filed. (Doc. No. 27, defendant's brief; Doc. No. 28, plaintiff's brief). For the reasons discussed below, plaintiff's motion for a preliminary injunction (Doc. No. 16) is granted.[4]

---

[1] On May 12, 2006, the Court also issued a Temporary Restraining Order ("TRO") (Doc. No. 7), which defendant has sought to have set aside. Defendant's motion (Doc. No. 10) is denied as moot.

[2] A transcript of the hearing has been filed. (Doc. No. 22).

[3] The Court also extended the TRO issued on May 12, 2006 to at least June 2, 2006. See Doc. No. 21. Plaintiff subsequently filed a motion seeking an order extending the TRO until such time as this Court rules on the motion for preliminary and permanent injunction. Defendant filed its opposition to such modification. (Doc. No. 26). In view of this ruling, plaintiff's motion (Doc. No. 25) is denied as moot.

[4] Plaintiff also sought a permanent injunction; however, that request is premature and will be decided by the Court at such time as this case reaches the remedy stage. The preliminary injunction will remain in force until further order of this Court, at a minimum for the duration of this litigation.

(5:06 CV 1094)

## I. BACKGROUND

On September 1, 2004, Skycasters LLC ("Skycasters") and Hughes Network Systems ("HNS") enter into Value Added Reseller ("VAR") Agreement under which HNS agreed to supply DIRECWAY internet service[5] to Skycasters' customers[6] in return for payment from Skycasters on a per customer basis.[7]  (Doc. No. 10-2, ¶ 3).  Skycasters claims that almost immediately its customers began to get inferior service from HNS, along with more technical problems and delays than HNS's own customers.  (Doc. No. 18-1, pp. 3-4; Doc. No. 10-2, ¶¶ 5-6).  In April 2005, Skycasters stopped making its payments under the VAR believing that breaches had occurred and hoping to cause HNS to find a resolution to Skycasters' customers' problems.  (Doc. No. 18-1, p. 4).

On August 10, 2005, HNS Vice President and Associate General Counsel Philip O'Brien contacted Skycasters' counsel and indicated HNS would pursue a breach of contract action if Skycasters did not resume payments.  (Doc. No. 10-2, ¶ 7).

On August 31, 2005, the VAR expired according to its own terms, following Skycasters' notification that it would not renew the agreement.  The VAR provided, however, that HNS would continue to provide DIRECWAY service to Skycasters' then-existing customers in return for Skycasters' payment of specified monthly fees.  (Doc. No. 10-2, ¶ 8).

---

[5] According to HNS, it developed DIRECWAY, a telecommunications system which provides internet service to approximately 350,000 subscribers throughout the world via satellite. (Doc. No. 10-1, p. 4; Doc. No. 10-2, ¶ 2).

[6] Skycasters has about 3000 customers located in North and South America, Costa Rica, the Caribbean, and Canada.  (Transcript of Hearing ["TR"] at 9).

[7] Skycasters' customers pay Skycasters directly; Skycasters, in turn, pays HNS.

2

(5:06 CV 1094)

On September 16, 2005, O'Brien wrote to Donald Jacobs, Skycasters' President, advising

that unless the past-due amount of $1,140,915 was paid immediately, HNS would exercise its

right under the VAR to suspend service to Skycasters' customers.  (Doc. No. 10-2, ¶ 9).

On September 29, 2005, Skycasters filed suit in Summit County and obtained a TRO

restraining HNS from suspending service to Skycasters' customers.  (Doc. No. 18-2, Att. 1).  The

lawsuit was later removed by HNS to this court and was assigned to Judge James Gwin.

("Lawsuit 1").  On March 21, 2006, the parties to Lawsuit 1 entered into a Settlement Agreement

pursuant to which Skycasters was required to pay $750,000 in seven installments through

September 1, 2006 and to transfer to HNS 1200 of Skycasters' existing DIRECWAY accounts.

This transfer was to occur gradually, in groups of about 50 customers per week.  Skycasters'

payment was secured by a Cognovit Note attached as Exhibit A to the Settlement Agreement.  In

return, HNS agreed to drop the lawsuit and its claim for $2.5 million and to allow Skycasters to

remain a reseller until September 30, 2006 at no additional cost to Skycasters through that date.

(Doc. No. 18-2, Att. 2).

The Settlement Agreement contained a provision detailing how HNS could communicate

with so-called "Initiating Accounts," that is, "customers of Skycasters that have initiated or will

initiate contact with HNS[.]"  (Doc. No. 18-2, ¶ 6).  HNS was to use a scripted communication

(attached to the Settlement Agreement as Exhibit B) and was to notify Skycasters of any such

communication.

Skycasters alleges that HNS almost immediately began to breach the notice provisions of

the Settlement Agreement.  Therefore, it filed the instant lawsuit on April 25, 2006 in the

3

(5:06 CV 1094)

Summit County Court of Common Pleas ("Lawsuit 2").  The complaint alleged breach of

contract (Count One) and tortious interference with business relationships (Count Two) and

sought to have the cognovit note attached to the Settlement Agreement declared void,

unenforceable and cancelled (Count Three).

On May 1, 2006, Skycasters refused to make its installment payment of $150,000 or to

transfer customers because of HNS's alleged breach regarding "Initiating Accounts."  (Doc. No.

18-2, ¶ 11).

On May 3, 2006, HNS removed Lawsuit 2 to this Court and it was assigned to the docket

of the undersigned.  On the morning of May 12, 2006, this Court, having reviewed the complaint

filed with the removal petition and having noted that no responsive pleading had yet been filed

by the defendant, sua sponte issued an order directing the plaintiff to file an amended complaint.

See Doc. No. 4.  A few hours later, plaintiff filed its motion for TRO, which this Court granted

late in the day after conducting an ex parte hearing with plaintiff's counsel.  See Doc. No. 7.[8]

On May 5, 2006, HNS filed a third lawsuit in Summit County ("Lawsuit 3") and obtained

a Cognovit Judgment against Skycasters in the amount of $550,000  plus costs and attorney fees.

(Doc. No. 18-7).[9]

On May 12, 2006, when Skycasters' customers logged on to their DIRECWAY accounts,

they received a "pop-up" from HNS telling them to switch to HNS because Skycasters was no

---

[8] A hearing was simultaneously set for May 23, 2006 on plaintiff's motion for
preliminary injunction.  See Doc. No. 8.

[9] On that same day, Skycasters learned that HNS's technical support staff had begun to
refuse to assist Skycasters' technical support people.  (Doc. No. 18-2, ¶ 12).

(5:06 CV 1094)

longer an approved provider.  (Doc. No. 18-3, Att. 2).  Skycasters alleges that this greatly

confused its customers, many of whom switched in fear of losing their internet service.[10]

On May 19, 2006, Skycasters' billing supervisor, Danielle Koly, started getting e-mails

and phone messages from confused customers, some of whom had already switched over to HNS

based on the message in the "pop-up."  Some of these customers allegedly now have two

accounts (one with Skycasters and one with HNS), with both entities refusing to cancel their

respective account without significant penalties to the customer.  (Doc. No. 18-3 and

attachments).

On May 23, 2006, this Court conducted the scheduled hearing on Skycasters' motion for

preliminary injunction, with both parties represented and in attendance.  At that hearing, the

Court questioned HNS as to why it had not filed its cognovit claim as a compulsory counterclaim

in the instant case, since plaintiff's complaint seeks to have the cognovit note declared void and

unenforceable.  The following exchange occurred with counsel for the defendant:

> THE COURT:  It's also my understanding that [HNS], the defendant in
> this case, went to Common Pleas Court in Summit County and obtained judgment
> on a cognovit note against plaintiff Skycasters, and I am curious when that case
> was filed and when they obtained the cognovit judgment.
>
> MR. NUSSBAUM:  Your Honor, we obtained the judgment on May 5th,
> 2006 before Judge Stormer in the Court of Common Pleas of Summit County.
>
> THE COURT:  And when did you file the complaint?
>
> MR. NUSSBAUM:  Same day, Your Honor.

---

[10] Skycasters' customers are primarily businesses located in remote areas which rely
heavily on continuous and reliable internet service.

(5:06 CV 1094)

       THE COURT:  And was there some reason why you didn't file that as a counterclaim in this case once you removed it?

       MR. NUSSBAUM:  We didn't believe that they were related.

       The cognovit is something that we have by virtue of the settlement agreement to secure Skycasters' obligation to pay us $750,000.

       there was 550 remaining to be paid.  They failed to make a payment; failed to cure when they were advised.  They also failed to transfer accounts.

       THE COURT:  In the case that Skycasters filed that you removed, did they claim there had been a breach of the agreement?

       MR. NUSSBAUM:  Yes.

       THE COURT:  Very well. Thank you. . . .

(TR. at 3-4).  Later in the hearing, the Court again expressed "skepticism about the claim that the

two are not related."  (Id. at 22).  The Court pressed counsel for the defendant:

       THE COURT:  You realistically believe that the two were separate after you removed this case over here?

       MR. NUSSBAUM:  I believe that we had a right, Your Honor, to execute on the cognovit note.

       I am prepared to litigate here and think, and will now that I have an operative complaint to respond to, move to dismiss the third count in which they seek a declaration that the cognovit is void and unenforceable because they're not entitled to do that.

       They're seeking the declaration on the basis--

       * * *

       THE COURT:  . . . But you want me to believe that you have the right to violate the terms of the contract completely and still get the $750,000?

       MR. NUSSBAUM:  Under the terms of the agreement, that's absolutely correct. . . .

6

(5:06 CV 1094)

> \* \* \*
>
> THE COURT: You went first on the cognovit judgment. . . .
>
> \* \* \*
>
> THE COURT:  And ignored this Court in the process, whose jurisdiction you sought with your removal.
>
> MR. NUSSBAUM:  Your Honor, I understand your point, but I believe -- respectfully suggest they are separate.  We're entitled --
>
> THE COURT:  I know your position.  It seems almost a fraud on the Court, but go ahead.

(TR. at 26-29).

The day before the hearing, on May 22, 2006, plaintiff filed its amended complaint, retaining the same three counts of the complaint.  (Doc. No. 19).  On May 26, 2006, defendant filed its answer, asserting a counterclaim for breach of the Settlement Agreement.  There is no mention of the cognovit judgment already obtained in the Summit County court.  In answer to each allegation contained in Count Three of the amended complaint, defendant simply states that it "contains allegations that relate solely to plaintiff's declaratory judgment claim, and no response to those allegations is required for the reasons stated in HNS's motion to dismiss that claim."  (Doc. No. 23, ¶¶ 19-22).  On the same day its answer was filed, HNS also filed a motion to dismiss Count Three of the Amended Complaint, asserting that it fails to state a claim upon which relief can be granted "because it seeks relief that is expressly prohibited by [the Settlement Agreement and cognovit note]."  (Doc. No. 24).

7

(5:06 CV 1094)

## II.  DISCUSSION

In its motion, plaintiff seeks the following:

A preliminary and permanent injunction barring Defendant, including its officers, agents, employees and contractors (1) from contacting any of Skycasters' customers outside the terms of the Settlement Agreement entered between the parties and dated March 21, 2006 ("Settlement Agreement"); and (2) from terminating the services currently being provided to Skycasters and/or its customers (the "Services") under the Settlement Agreement.

This Court must consider four factors in determining whether it should grant an

injunction:

(l) the plaintiff's likelihood of success on the merits;

(2) whether the plaintiff may suffer irreparable harm absent the injunction;

(3) whether granting the injunction will cause substantial harm to others;

(4) the impact of an injunction upon the public interest.

Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 400

(6th Cir.2001).  "None of these factors, standing alone, is a prerequisite to relief; rather, the court

should balance them."  Golden v. Kelsey-Hayes Co., 73 F.3d 648, 653 (6th Cir. 1996).

HNS argues that this entire lawsuit is barred and, at the very least, no preliminary

injunctive relief should be granted during the lawsuit's pendency because of the express terms of

the Settlement Agreement in Lawsuit 1.  That Agreement provides, in relevant part, as follows:

3.  Cognovit Note.  The Parties agree to the terms of the Cognovit Note attached hereto as Exhibit "A" and incorporated herein by reference (the "Note") to secure Skycasters' payment of the Settlement Payment Amount.  Skycasters agrees that it will not oppose HNS's execution of judgment obtained pursuant to the Note based upon HNS's alleged failure to perform any obligation under this Settlement Agreement.

8

(5:06 CV 1094)

> 4.  <u>Default; Settlement Payments</u>.  If HNS does not receive a scheduled wire transfer and/or Skycasters fails to initiate a wire transfer in accordance with the Settlement Payment Schedule, HNS agrees to immediately provide written notice to Skycasters and, upon receiving said written notice, Skycasters shall have three (3) business days to cure any late payment by effectuating said wire transfer to HNS.  If Skycasters fails to cure a late payment as provided herein, then Skycasters shall be in default of this obligation, and HNS shall be entitled to pursue collections of the full amount remaining due under the Note and to terminate immediately the provision of DIRECWAY products and services to customers of Skycasters.  HNS represents and warrants to Skycasters that it: (i) will not transfer the Note and/or any remaining unpaid balance due under the Note to any third party; and (ii) will not pursue collection on any amount due under the Note except as described in <u>Section 4</u> and <u>Section 7</u>.

> \* \* \*

> 7.  <u>Default; Transfer of Accounts</u>.  If Skycasters fails to transfer Accounts to HNS in accordance with <u>Section 5</u>, HNS agrees to provide immediately written notice to Skycasters and, upon receiving said written notice, Skycasters shall have three (3) business days to effectuate said Account transfers.  If Skycasters fails to cure said failure to transfer Accounts as provided herein, then Skycasters shall be in default of this obligation, and HNS shall be entitled to pursue collection of the full amount remaining due under the Note and to terminate immediately the provision of DIRECWAY products and services to customers of Skycasters.

(Doc. No. 18-2, underlining in original).  Bold, underlined, upper case print at the end of the

Settlement Agreement warned that a judgment could be taken against Skycasters for failure to

pay on time "regardless of any claims [Skycasters] may have against [HNS] . . . for . . . failure on

[HNS's] part to comply with the agreement . . . ."  (<u>Id</u>.).  The cognovit note attached to the

Settlement Agreement repeated the requirements of the Settlement Agreement and

acknowledged that acceleration and confession of judgment were HNS's remedies in the event of

default by Skycasters.

"The cognovit is the ancient legal device by which the debtor consents in advance to the

holder's obtaining a judgment without notice or hearing, and possibly even with the appearance,

9

(5:06 CV 1094)

on the debtor's behalf, of an attorney designated by the holder. . . . In Ohio the cognovit has

long been recognized by both statute and court decision. . . . The State's courts, however, give

the instrument a strict and limited construction." D. H. Overmyer Co. Inc., of Ohio v. Frick Co.,

405 U.S. 174, 176 (1972) (internal citations omitted).

When Skycasters stopped making its payments under the Settlement Agreement because

it believed that HNS was in breach of its obligations regarding permissible ways of contacting

Skycasters' customers, it arguably did so at its own risk, given the more than clear provisions

quoted above.  However, although Ohio law recognizes cognovit notes and cognovit judgments,

it also recognizes that there may be meritorious defenses to a claim made under such a note.

In this instant lawsuit, Skycasters alleges breach of the Settlement Agreement and

tortious interference with a business relationship and asserts that "due to HNS' material

breaches, Skycasters was excused from further performance to HNS, including payments."

(Doc. No. 19, ¶ 9).  Skycasters seeks a declaratory judgment "that the cognovit note mentioned

in Section 3 of the Settlement Agreement . . . is void and unenforceable and that HNS be ordered

to cancel said note."  (Id., ¶ 20).

Importantly, Skycasters asserts that this lawsuit was filed before HNS's May 1, 2006

notice to Skycasters of its alleged default under the Settlement Agreement, (id., ¶ 21) and,

certainly, well before HNS obtained the May 5th cognovit judgment.  This Court agrees that

10

(5:06 CV 1094)

Skycasters had already put at issue the question of whether it had a legitimate defense to a

cognovit claim, a claim which HNS would only <u>later</u> assert in another court.[11]

Although this Court will not now state any view with respect to the strength of

Skycasters' defensive Count Three, it must conclude that the claim does not lack absolute merit.

In fact, at the hearing, HNS seemed to suggest it may never have had plans to comply with the

terms of the Settlement Agreement relating to "Initiating Accounts."  As Skycasters has

suggested, it may have always been HNS's ultimate goal to "convert" (TR at 59) Skycasters'

customers into HNS customers.  Count Two of the Amended Complaint alleges just such tortious

interference.  At the hearing, HNS assured this Court that, if the Court declined to issue a

preliminary injunction, HNS would promise not to cut off service to Skycasters' customers prior

to September 30, 2006.[12]  HNS also stated explicitly:  "[A]ll we want to do is have the

opportunity to keep them on the service <u>and to develop our own relationships with them[.]</u>"  (TR

at 59).  It may be that this has <u>always</u> been HNS's goal.  That will be for a fact-finder to

determine.

---

[11] Skycasters would certainly be encouraged to pursue a Rule 60(B) motion in the Summit County Court of Common Pleas to try to set aside that court's cognovit judgment. However, this Court has no authority to do so.  <u>See</u> <u>Meyers v. McGuire</u>, 80 Ohio App.3d 644, 646 (Ohio Ct. App. 9 1992) (The prevailing view is that relief from a judgment taken upon a cognovit note, without prior notice, is warranted by authority of Civ.R. 60(B)(5) when the movant (1) establishes a meritorious defense, (2) in a timely application.").

[12] Since Skycasters is no longer a Value Added Reseller for HNS, it cannot collect payment for the DIRECWAY services; however, since the Settlement Agreement commits HNS to supply the services to Skycasters' customers through September 30, 2006, HNS argues that these customers will receive "four months for free."  (TR at 59).  The Court is not convinced that HNS will not find a way to make these customers pay; therefore, the "four months for free" characterization may be a bit disingenuous.

(5:06 CV 1094)

This Court concludes, with respect to the first of the four factors to be considered, that there is at least a reasonable likelihood of success on the merits for Skycasters as to the claim asserted in its amended complaint.

HNS argues that Skycasters cannot show it will suffer irreparable harm if the injunction is not granted.  It argues that harm, if any, to Skycasters can be compensated in damages, should Skycasters prevail here.  The Court notes, however, that, given the disparity of the parties' respective customer bases (3000 Skycasters customers compared to 350,000 HNS customers), there would most certainly be no harm to HNS if the injunction were to be granted.

While it may be true that compensatory damages would be an adequate remedy for lost income that Skycasters may suffer due to loss of customers directly attributable to any proven breach of the Settlement Agreement,[13] Skycasters has also argued that the loss to its business reputation caused by HNS's alleged breach of the Settlement Agreement is not compensable in damages, is difficult to quantify, and can only be protected by an injunction.  It asserts that it already has angry customers who are blaming Skycasters for the difficulties with their service that can only, in Skycasters' view, be blamed on HNS.

It seems to this Court that the way Skycasters' business reputation might be damaged is if its customers lose their DIRECWAY service and/or are unable to obtain a comparable alternative service and then blame Skycasters for that fact.  Customers may no longer be able to access DIRECWAY through Skycasters (due to the expiration of the VAR and the

---

[13] It seems possible that loss of customers, if any, will be proven to be caused by the lapse of the VAR Agreement, not necessarily by any breach of the Settlement Agreement. However, that would be for the finder of fact to determine.

12

(5:06 CV 1094)

discontinuation of service under the VAR after September 30, 2006, see Settlement Agreement,

¶ 8 (Doc. No. 18-2)); but they can still obtain the service from HNS and, under the terms of the

Settlement Agreement, HNS is permitted to communicate with Skycasters customers who

"initiate" the contact.  HNS is simply prohibited from trying to affirmatively steal customers

away from Skycasters  by way of the pop-ups which have been discontinued due to the TRO and

would be prohibited under any preliminary injunction.

      The Court does not have any view as to the relative merits of the various claims and

defenses.  However, in view of the size of Skycasters as compared to the size of HNS (i.e., in

terms of customer base), the Court concludes that Skycasters will potentially suffer irreparable

harm, perhaps to the point of being driven out of business, if HNS is permitted to contact

Skycasters' customers outside the negotiated terms of the Settlement Agreement.  The Court

does not perceive harm to others, least of all HNS, or to the public interest by the granting of an

injunction.  Accordingly, the Court concludes that the three remaining factors all weigh in

Skycasters' favor.

(5:06 CV 1094)

### III.  CONCLUSION AND PRELIMINARY INJUNCTION

 Accordingly, in light of the above discussion, plaintiff's motion for a preliminary

injunction (Doc. No. 16) is granted.[14]  The Court orders as follows:

> A preliminary injunction is entered barring Defendant, including its officers,
> agents, employees and contractors (1) from contacting any of Skycasters'
> customers outside the terms of the Settlement Agreement entered between the
> parties and dated March 21, 2006 ("Settlement Agreement"); and (2) from
> terminating the services currently being provided to Skycasters and/or its
> customers (the "Services") under the Settlement Agreement.


The defendant's motion to set aside the TRO (Doc. No. 10) is denied as moot;  the

plaintiff's motion to clarify (Doc. No. 25) is denied as moot.

Defendant has also filed a motion to dismiss Count Three of the Amended Complaint.

(Doc. No. 24).  Although the motion has not been fully briefed, the Court concludes that it has

no merit and denies it without prejudice to renewal if further proceedings suggest that renewal

would be appropriate.

IT IS SO ORDERED.



  June 2, 2006                                              s/ David D. Dowd, Jr.
Date                                                      David D. Dowd, Jr.
                                                          U.S. District Judge




---

[14]  Plaintiff simultaneously moved for both preliminary and permanent injunctive relief.
To the extent Doc. No. 16 seeks a permanent injunction, it is premature and is denied for record
purposes.  If plaintiff does prevail in this lawsuit, it may be appropriate to enter some form of
permanent injunctive relief.  The Court need not decide that now.

14